UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FREESTYLE BRANDS, LLC | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-368-SDJ |
| | § | |
| SMART STUDY CO., LLC | § | |

**MEMORANDUM OPINION AND ORDER**

When a video becomes wildly popular on the internet, we hear that it has "gone viral."[1] That term surely applies to the so-called "Baby Shark" video, which is at the heart of the parties' dispute in this case. The video, which began its rapid ascent in pop culture in 2015, mixes animation and two children dancing out the story of a shark family, "K-pop style."[2] Aimed particularly at young children, the video's effect on viewers has been characterized as "an irresistible, fantastical delight" for toddlers and a "maddeningly infectious earworm that haunts at all hours" for their parents.[3] But whether they loved it or reacted with some other emotion, many Americans and others around the world have been exposed to the "Baby Shark" phenomenon. And

---

[1] *See* Abby Ohlheiser, *Maybe It's Time to Retire the Idea of "Going Viral,"* MIT Tech. Rev. (May 17, 2020), https://www.technologyreview.com/2020/05/17/1001809/maybe-its-time-to-retire-the-idea-of-going-viral/ [https://perma.cc/83AP-N3MS].

[2] "'Baby Shark' song, video phenomenon bites into pop culture in a big way," Chicago Sun Times (Dec. 13, 2018), https://chicago.suntimes.com/2018/12/13/18421015/baby-shark-song-video-phenomenon-bites-into-pop-culture-in-a-big-way.

[3] "The story of 'Baby Shark': How toddlers around the world made a K-pop earworm go viral," Washington Post (Sept. 14, 2018), https://www.washingtonpost.com/lifestyle/style/the-story-of-baby-shark-how-toddlers-around-the-world-made-a-k-pop-earworm-go-viral/2018/09/13/5b517772-b68c-11e8-a2c5-3187f427e253_story.html.

1

an apt measure of its immersion in popular culture is the fact that the "Baby Shark" video has amassed over thirteen billion, yes "billion," views on the YouTube media platform.

The creator of the video is the Defendant in this case, The Pinkfong Company, Inc. f/k/a Smart Study Co., Ltd. ("Pinkfong"). The Plaintiff, Freestyle Brands, LLC ("Freestyle"), is the owner of several shark-themed trademarks that it uses in connection with watches and watch-related goods. Freestyle brings this suit for trademark infringement and unfair competition arising from its allegation that Pinkfong has improperly exploited Freestyle's reputation and good will through Pinkfong's purported unauthorized use of a confusingly similar mark, "Baby Shark," and the shark fin design on watches. Freestyle has asserted that this Court has both general and specific jurisdiction over Pinkfong.

Before the Court is Pinkfong's Motion to Dismiss for Lack of Personal Jurisdiction or Alternatively, to Transfer this Case to the Central District of California. (Dkt. #6). Because the Court has neither general nor specific jurisdiction over Pinkfong, the motion will be granted.

## I. LEGAL STANDARD

A party may move to dismiss an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). This defense is premised on the fact that the Court's jurisdiction over a defendant is constrained by due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To pursue a lawsuit against a defendant, a plaintiff must establish that the defendant maintains adequate contacts with the forum state such that haling him to the State

2

to defend himself would neither be "[un]reasonable" nor offend "traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024, 209 L.Ed.2d 225 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Although the burden rests with the plaintiff to establish the core elements of personal jurisdiction, the plaintiff can satisfy that burden at the pleading stage by simply presenting a prima facie case for jurisdiction. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). "Allegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by [a] defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982)).

## II. BACKGROUND

### A. Freestyle's Complaint

The factual allegations in Freestyle's trademark complaint against Pinkfong are sparse. Freestyle alleges that it has obtained several trademark registrations around the world, including in the United States, for a family of marks using the common term "SHARK" for watches and watch-related accessories. According to Freestyle, for 35 years it has used its Shark trademarks, among others, continuously in interstate commerce in connection with watches and watch-related goods in the United States and throughout the world.

Freestyle goes on to broadly allege that Pinkfong has exploited and continues to exploit Freestyle's reputation and goodwill by Pinkfong's purported improper and

3

unauthorized use of a confusingly similar mark, "Baby Shark," and the shark fin design on watches. Freestyle further alleges that Pinkfong has widely advertised, marketed, and promoted the name "Baby Shark" and the shark fin design on watches and other products, and that Pinkfong's conduct may create a likelihood of "reverse confusion" because "customers will believe [Pinkfong] is affiliated with [Freestyle]." (Dkt. # 1 at ¶25).[4] Based on these allegations, Freestyle has asserted trademark-infringement claims against Pinkfong under federal statutory law and Texas common law, as well as an unfair-competition claim under federal law.

**B. Pinkfong's Uncontroverted Evidence**

In support of its dismissal motion, Pinkfong submitted the Declaration of Jungha Ahn, Pinkfong's IP Team leader. The following factual information provided in Ahn's declaration is uncontroverted. Pinkfong is a limited company organized and in existence under the laws of South Korea, with a principal place of business in Seoul, South Korea. Pinkfong has no offices or employees in the United States, including in Texas. It has one wholly owned subsidiary in the United States, Pinkfong USA, a corporation organized and existing under California law, with a principal place of business in Los Angeles, California. Pinkfong USA's only office is in California, and it has no offices or employees outside California, and particularly has no employees or offices in Texas. Pinkfong does not own any real or personal property in Texas, is not registered to do business in Texas, and has no mailing address in

---

[4] There are no allegations of any kind in the complaint about Pinkfong's wholly-owned subsidiary in the United States, Pinkfong USA, Inc. ("Pinkfong USA"). *See generally* (Dkt. #1).

4

Texas. Pinkfong also does not use any manufacturing facilities in Texas and has no licensees located in Texas.

Pinkfong confirms that it created the "Baby Shark" video and that it is the owner of all rights, title, and interest in any intellectual property rights relating to the video, as well as any Pinkfong and "Baby Shark" brands, including trademark registrations and applications covering "Baby Shark" for a variety of goods and services. Pinkfong licenses its Pinkfong and "Baby Shark" brands from its office in Seoul, South Korea. It also has an agreement with Pinkfong USA under which Pinkfong USA is permitted to license and "otherwise exploit[]" certain intellectual property rights owned by Pinkfong in the United States, including the Pinkfong mark.

Pinkfong USA's licensing and exploitation of Pinkfong's intellectual property rights is operated from Pinkfong USA's headquarters in Los Angeles, California. Pinkfong USA has entered into one direct license in the United States with a licensee located in New York, New York (the "New York licensee"). The license, which has expired, granted the licensee certain non-exclusive rights to use, among other things, the Pinkfong mark in connection with watches sold in the United States. Pinkfong understands that any such watches were designed in New York City.

Pinkfong USA also has an agreement with Viacom International Inc. ("Viacom"), a Delaware corporation with its principal place of business in New York, New York, and offices in California. Pinkfong USA's agreement with Viacom grants

5

Viacom the right to license and otherwise exploit certain intellectual property rights owned by Pinkfong globally, as well as the right to sublicense such rights.

Viacom, in turn, has entered two of its own license agreements, under which Viacom's sublicensees have been granted the right to use the Pinkfong mark in connection with the sale of watches in various territories, including the United States. Viacom's sublicensees, one of which is a New York entity with its principal place of business in New York City, and the second of which is a private limited company formed under the laws of the United Kingdom with its principal place of business in Leeds, United Kingdom, have not sold any such watches anywhere in the United States.

Finally, Pinkfong confirms that it has not itself manufactured, distributed, advertised, offered for sale, or sold, any watches or watch-related accessories—as alleged and described in Freestyle's complaint—anywhere, including in Texas.

### III. DISCUSSION

Personal jurisdiction over a defendant can be established under two general theories—either general jurisdiction, which refers to the Court's "all-purpose" jurisdiction over defendants that are essentially at home in the forum state; or specific jurisdiction, which refers to "case-linked" jurisdiction arising from a defendant's activities directed toward the forum state. Freestyle argues that this Court possesses both. The Court considers each in turn.

### A. The Court Lacks General Jurisdiction.

General jurisdiction exists when the defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (cleaned up). In general, "a corporation's 'home' falls in two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020). It is "incredibly difficult to establish general jurisdiction in a forum" other than these two places. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Here, Freestyle admits that Pinkfong is organized under the laws of South Korea, thereby conceding that Pinkfong is not incorporated in Texas. (Dkt. #1 ¶ 6). And nowhere does Freestyle claim that Texas is Pinkfong's principal place of business. Instead, Freestyle asserts general jurisdiction on the basis that Pinkfong "do[es] business in this district." (Dkt. #1 ¶ 8). Specifically, Freestyle argues that Pinkfong's "role in orchestrating sales in the United States and in Texas . . . constitute such minimum contacts to establish . . . general personal jurisdiction in the State of Texas and this District." (Dkt. #11 at 8–9). But this conclusory allegation, even if true, is insufficient to establish that the Court has general jurisdiction. As the Fifth Circuit has made clear, "in order to confer general jurisdiction a defendant must have a business presence *in* Texas. It is not enough that a corporation do business *with* Texas." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008)

(citation omitted). There is no dispute that Pinkfong has no business presence in Texas whatsoever. Pinkfong has no offices, no manufacturing facilities, and no employees in Texas. It does not own any real or personal property in Texas, is not registered to do business in Texas, has no mailing address in Texas, and has no licensees located in Texas. And as Pinkfong has confirmed, and Freestyle also does not dispute, Pinkfong "has not itself manufactured, distributed, advertised, offered for sale and/or sold" the alleged infringing goods identified in Freestyle's complaint "anywhere, including in the State of Texas." (Dkt. #6-1 ¶ 24).

In sum, to the extent Pinkfong has any contacts with this State, they plainly are not sufficiently systematic and continuous as to render it essentially "at home" here. The Court does not have general jurisdiction.

**B. The Court Lacks Specific Jurisdiction.**

"Specific jurisdiction arises when the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (citation omitted). The Court evaluates specific jurisdiction using a "three-step" procedure. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). First, the plaintiff must demonstrate that the defendant has minimum contacts with the forum state—meaning, that the defendant purposely directed his activities at the forum state and availed himself of the privilege of doing business in the State. *Id.* Second, the plaintiff must demonstrate that the causes of action asserted against the defendant arose from the defendant's contacts with the forum state. *Id.* And third, after the plaintiff establishes the first two requirements,

8

the burden then shifts to the defendant to prove that maintaining a lawsuit in the forum state would be either "unfair" or "unreasonable." *Id.*

To establish minimum contacts, Freestyle must show that Pinkfong "purposefully availed [itself] of the benefits and protections of [Texas] such that [it] should reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (cleaned up). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 193–94 (quoting *Burger King Corp.*, 471 U.S. at 475). Freestyle fails at this first step of the specific-jurisdiction inquiry.

Freestyle hinges its minimum contacts argument on the "stream of commerce" theory. "That doctrine recognizes that a defendant may purposely avail itself of the protection of a state's laws—and thereby will subject itself to personal jurisdiction 'by sending its goods rather than its agents' into the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011)). To succeed under this theory, a plaintiff "need only show that [the defendant] delivered the product that injured [him] 'into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Id.* at 779 (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)); *see also Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) ("This court has consistently held that 'mere foreseeability or awareness [is] a

9

constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" (citation omitted)).

Freestyle's theory of specific jurisdiction over Pinkfong fails for several reasons. At the outset, Freestyle relies on the alleged activities of Pinkfong USA—the subsidiary of Pinkfong—or Pinkfong USA's licensees, rather than the actions of Pinkfong itself, to establish specific jurisdiction. Recall that Freestyle does not dispute that Pinkfong does not manufacture, advertise, or sell any of the shark-themed watches and watch accessories at issue in this case, nor does it have any direct licenses to market or sell such products in the United States. Given this concession, Freestyle appears to point to the actions of Pinkfong USA and its licensees as the basis for personal jurisdiction in this case, rather than any conduct of Pinkfong itself.

The problem with haling Pinkfong into court in Texas based on the alleged actions of its subsidiary, Pinkfong USA, is that, "[g]enerally, 'the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.'" *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 251 (5th Cir. 2019) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004)). As the Fifth Circuit has explained, this "presumption of institutional independence" can be rebutted "by 'clear evidence,' which requires a showing of 'something beyond' the mere existence of a corporate relationship between

a resident and nonresident entity." *Id.* (quoting *Freudensprung*, 379 F.3d at 346). To determine whether the plaintiff has "'overcome the presumption of corporate separateness' such that the corporations may be 'fuse[d] . . . for jurisdictional purposes,' the following factors, referred to as the *Hargrave* factors," guide the Court's inquiry: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Id.* (quoting *Freudensprung*, 379 F.3d at 346); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). In conducting this analysis, the Fifth Circuit has noted that "'the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos,' even where other factors support an alter ego relationship." *Diece-Lisa*, 943 F.3d at 251 (quoting *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 588 (5th Cir. 2010); *see also Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988) ("[I]t is well-settled that where . . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent.").

Here, Freestyle fails to allege any facts that suggest an alter-ego relationship between Pinkfong and Pinkfong USA. To the contrary, and as Pinkfong has correctly noted, there are no plausible allegations, much less any proof, suggesting that Pinkfong is a link in a stream-of-commerce chain for the complained-of shark-themed products, or that any contacts Pinkfong USA may have with Texas, however

11

attenuated those contacts might be, somehow should be imputed to Pinkfong. Instead, this case aligns with cases in which courts have found a "passive parent-subsidiary relationship" that is "insufficient to support jurisdiction." *In re DePuy Orthopaedics*, 888 F.3d at 780; *see also Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999) (observing that "the mere fact that a corporate relationship exists is not sufficient to warrant the assertion of jurisdiction over a related corporate entity" and finding that plaintiff had "failed to carry the burden of establishing a prima facie showing of sufficient control to establish an alter-ego or agency relationship" between the entities); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (concluding that the parent company could not be considered the alter ego of its subsidiaries for jurisdictional purposes). Because Freestyle's jurisdictional allegations against Pinkfong apparently turn on an alter-ego relationship between Pinkfong and Pinkfong USA that has not even been plausibly alleged, much less demonstrated through any evidence, specific jurisdiction over Pinkfong is absent.

Freestyle's allegations of specific jurisdiction also fail because, even as applied to the actions of Pinkfong USA, they are conclusory and insufficient on their face, and run afoul of established precedent that mere licensor-licensee relationships cannot be construed to support jurisdiction based on a licensee's sale of alleged infringing products in the forum state. To begin with, Freestyle's sparse factual allegations are conclusory, broadly asserting that Pinkfong has sold "goods that infringe on Plaintiff's trademarks in this district," without plausibly alleging precisely what alleged

12

infringing products have been manufactured, advertised, or sold by Pinkfong itself, or for that matter by Pinkfong USA. The omission is perhaps unremarkable, as Freestyle has impliedly conceded that Pinkfong has not itself manufactured, distributed, advertised, offered for sale, or sold any of the alleged infringing goods identified in Freestyle's complaint anywhere, including in Texas.

Freestyle also does not dispute that Pinkfong USA has granted one direct license in the United States to a licensee located in New York City, which has expired. This New York Licensee was granted certain non-exclusive rights to use, among other things, the Pinkfong mark in connection with watches sold in the United States. It is also undisputed that Pinkfong USA also has an agreement with Viacom, another United States company based in New York City, which grants Viacom the right to license and otherwise exploit certain intellectual property rights owned by Pinkfong globally, as well as the right to sublicense such rights. Viacom, in turn, has entered two of its own license agreements, under which Viacom's sublicensees have been granted the right to use the Pinkfong mark in connection with the sale of watches in various territories, including the United States. Viacom's sublicensees, a New York company and a British company, have not sold any shark-themed watches or watch accessories anywhere in the United States. In short, the record also does not support any meaningful connection between Pinkfong USA and Texas.

Finally, and again, even focusing on the actions of Pinkfong's subsidiary, Pinkfong USA, there is no disagreement between the parties that Pinkfong USA merely granted non-exclusive licenses and related agreements that allowed the

licensees, and their sublicensees, to use the Pinkfong mark in connection with watches sold in the United States, some of which appear to have been sold in Texas. The Fifth Circuit has expressly rejected precisely this theory of specific jurisdiction applied to a licensor: "Neither this nor any other circuit has held that specific jurisdiction may arise solely from a defendant licensor's non-exclusive licenses to third parties who sell allegedly infringing products in the forum state, and at least one circuit has explicitly rejected such a theory." *Diece-Lisa*, 943 F.3d at 253 (citing *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) ("[O]ur case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities."))._[5]_ Put simply, "something more than a non-exclusive licensor-licensee relationship is required to support the exercise of personal jurisdiction over the licensor." *Diece-Lisa*, 943 F.3d at 253. Here, even as to Pinkfong USA, no such additional contacts with Texas have been plausibly alleged or demonstrated. For this additional reason, and *a fortiori*, specific jurisdiction cannot be asserted as to Pinkfong itself.

---

[5] *See also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361–62 (Fed. Cir. 1998) (finding the forum contacts of licensees "insufficient" to submit licensor to personal jurisdiction where licensor had "no control over [licensees'] activities"); *Sinclair v. StudioCanal, S.A.*, 709 F.Supp.2d 496, 509 n.8 (E.D. La. 2010) ("Courts routinely hold that the mere existence of a licensor-licensee relationship is insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction." (cleaned up)).

\* \* \* \*

Given its ubiquity and popularity, it's fair to assume that Pinkfong's "Baby Shark" video has been exploited through the development, manufacture, and sale of products based on its "shark" theme and with the benefit of Pinkfong's mark. But the worldwide popularity of "Baby Shark," and particularly its popularity across the United States, does not automatically carry with it the prerequisites for the assertion of personal jurisdiction over Pinkfong in federal courts throughout America. In this case, Freestyle has failed to establish that Pinkfong "purposefully availed [itself] of the benefits and protections of [Texas] such that [it] should reasonably anticipate being haled into court there." *Carmona*, 924 F.3d at 193 (cleaned up). Therefore, the Court need not decide whether the causes of action arose from any contacts with Texas or whether maintaining the lawsuit in Texas would be unfair. Since Freestyle cannot show that Pinkfong has the requisite minimum contacts with Texas, the Court does not have general or specific personal jurisdiction over Pinkfong.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Freestyle has failed to present a prima facie case for either general or specific personal jurisdiction. Because the Court does not have personal jurisdiction in this case, it need not decide whether this case should be transferred.

Therefore, it is **ORDERED** that Defendant's Motion to Dismiss, (Dkt. #6), is **GRANTED in part**. Freestyle's Complaint is **DISMISSED.**

**So ORDERED and SIGNED this 6th day of October, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE